Sun Mutual Ins. Co. and others *v.* Mississippi Valley Transp. Co.*

*(District Court, E. D. Missouri.  December 13, 1882.)*

1. PLEADING—CORPORATIONS.

Where parties joined as libelants are corporations the libel should so aver.

2. SAME—JOINDER OF PARTIES.

Where goods belonging to different parties are shipped by the same vessel, and are injured by a common disaster caused by the same act of negligence on the carrier's part, the different shippers or their assignees may join in filing a libel in admiralty to recover their damages.

3. SAME.

In such cases the demand of each libelant should, it seems, be alleged in a distinct article.

4. SAME—PLEADING—EXHIBITS.

Where the cause of action set forth in a libel has arisen from the violation of a written contract of affreightment, the libel should so state, and the contract should be annexed to the libel, or a legal excuse for its absence given.

5. COMMON CARRIER — NEGLIGENCE — COLLISION CAUSED BY CARELESSNESS OF PARTIES FURNISHING MOTIVE POWER.

Where A., a common carrier, which owned a line of barges, contracted with B. to convey certain goods on its barges safely from C. to D., the dangers of navigation and collision excepted ; and where, while A. was getting together its barges in the harbor of C., preparatory to starting them to D., the barge in which B.'s goods had been placed was brought into collision with another of A.'s barges, through the mutual carelessness of two tug-boats belonging to E., but which were in A.'s employ, and at the time engaged in towing said barges, and B.'s said goods were damaged,—*held,* that the collision was not an excepted peril, and that A. was liable to B. for the damages which he had sustained.

*Reported by B. F. Rex, Esq., of the St. Louis bar.

6. SAME—LIMITATIONS.

    Suit having been brought against said carrier, upon the cause of action above stated, about 28 months after the collision, *held* that the demand had not become stale.

In Admiralty. Suit for damages.

The libelants alleged in their original libel that they were insurance companies; that respondent was a common carrier, and the owner of a barge line running between St. Louis and New Orleans; that several different lots of merchandise (describing them) insured by libelants had been delivered to respondent, "for the respondent, as common carrier, to receive, take care of, and to safely and securely carry and convey from said city of St. Louis to the said city of New Orleans without delay, the dangers of navigation, explosion, and collision only excepted, and there, at the said city of New Orleans, to deliver all the said goods, in like condition and good order, * * * for certain reward to be paid therefor; and that respondent had, as such common carrier, accepted said merchandise for transportation as aforesaid;" that said goods were laden on defendant's barge, New Orleans, which was moored along-side of a warehouse in East St. Louis; that respondent was the owner of another vessel known as barge Fifty-four, upon which respondents had laden a cargo, and which they had moored along-side of an elevator at the city of St. Louis; that defendants, intending to use one of their tow-boats to tow these barges to New Orleans, hired two steam-tugs to tow the barges from the places at which they were respectively moored to a point in the harbor of St. Louis at which their wharf-boat and tow-boat were lying; that, in pursuance of that hiring, respondents ordered one of said tugs to go for one of said barges, and the other to go for the other, and tow them to their said wharf; that each of said boats made fast to the barge for which it had been sent, and started for respondent's wharf; but before reaching it the two barges were brought into collision with each other through the mutual carelessness of the crews of said tug-boats, and the merchandise shipped as aforesaid greatly damaged; that libelants respectively paid the consignors of the merchandise insured by them the amount of their losses; and that said consignors assigned their respective causes of action arising as aforesaid to libelants.

The demands of the libelants were all alleged in the same article. It was not stated whether the contracts of affreightment were written or oral, (though they were in fact written,) and they were not set out in or attached to the libel; nor was it stated in the libel whether

or not libelants were corporations. The collision was alleged to have occurred February 1, 1880. The libel was filed July 22, 1882.

The respondent excepted to the libel on the following grounds, to-wit: (1) That libelants had delayed the production of suit for the enforcement of their pretended demands until the same were stale; (2) that the libel was multifarious; (3) that it did not state any cause of action, inasmuch as it was alleged that it was based upon a cause of contract of affreightment, and said libel did not state with legal certainty sufficient facts to show what such contract was, and did not state facts sufficient in law to show that respondent ever made a contract of affreightment with libelants, or that they have any cause of action upon any contract of affreightment against respondents; that said libel did not state facts authorizing libelants to sue upon any contract of affreightment, nor facts showing any breach of contract of affreightment upon which it is liable to libelants; that said libel mingles in an inextricable manner in one statement, several distinct alleged and pretended causes of action, (not describing either with legal certainty,) which cannot be so united and pleaded; that said libel was not drawn with sufficient certainty and precision to enable the respondent to answer same with safety; and that it is vague and indefinite, and violative of the rules of admiralty pleading requiring particularity and certainty.

*O. B. Sansum* and *Brown & Young,* for libelants.

*Given Campbell,* for respondent.

TREAT, D. J.   1. It appears from the verification that each of the libelants is a corporation; and, if so, the libel should so aver.

2. If the contracts of affreightment were *in writing* the libel should so state, and annex the same, or give a legal excuse for not so doing. According to the libel there was a common disaster, whereby the injury was done to the property named, belonging to different owners, to whose rights, respectively, these libelants separately succeed. Their right to join in the action is within the reason of the rule laid down in collision, and other cases, to prevent multiplicity of suits resting on a common ground.   If it be found true, as averred, that the same act of negligence caused the injury to each, nothing will remain other than to ascertain the extent of damages sustained by each owner, and to enter a decree accordingly.   In other than admiralty proceedings such joinder would be inadmissible.

Rule 23 in admiralty states the general mode of pleading, under which there may be some doubt whether the interest or demand of each libelant should not be alleged in a distinct article, so that the

respondent may answer thereto as the facts justify, for it may be very different defenses exist.

The exceptions will be sustained as to the three points here stated, and leave granted to amend accordingly.

The exceptions as to all other points are overruled.

———

An amended libel was thereupon filed, to which were attached as exhibits bills of lading for the goods alleged in the libel to have been damaged. The bills of lading each contracted to deliver the merchandise described therein without delay at New Orleans, "*the dangers of navigation, fire, explosion, and collision excepted.*"

TREAT, D. J. The libelant, subrogated to the rights of several shippers and consignees, claims, under respective contracts of affreightment, that the respondent is answerable for the non-delivery of the goods shipped. The bills of lading contain the excepted perils as to the dangers of navigation, etc.

The facts are, briefly, that many goods were shipped on respondent's barges in the port of St. Louis, one of the barges being on the Missouri shore and the other on the Illinois shore and above the bridge. The respondent had its barges at different points in the port for the purpose of being loaded, and when so loaded employed harbor tug-boats to tow them to respondent's wharf-boat, where the general tow was made up for the purpose of transporting or towing the fleet of barges down the Mississippi river to their destination. In the course of respondent's business two tugs were sent by it above the bridge,—one to the Illinois shore and one to the Missouri shore,— each to tow respectively a specified barge to respondent's wharf-boat. It so happened that the respective tug-boats, in the attempted performance of their duties, collided, whereby the damages complained of were caused. The contention has been, and a large amount of evidence taken, that the tugs were not in fault, but the accident was inevitable, or a peril of navigation; or, if that be not so, that the tug-boats, one or the other, or possibly both, were in fault, and they or their owners are alone liable for the damages.

From the evidence, both were in fault; but whether this is so or not is unimportant in this case, for each belonged to the same owners, and this is not a suit *in rem* against either, nor is it a suit *in personam* against the owners of the tugs.

The sole question is whether, under the contracts of affreightments, such employment of the tug-boats, and a disaster caused by the misconduct of one or the other, exonerates the respondent from his liability, and drives the shippers to a suit against the tug-boats and their owners.

Under the affreightment contracts the goods shipped were to be delivered safely at New Orleans, with the excepted perils reserved. The shippers were not concerned with nor to be affected by the motive force to be employed by the respondent. The latter had a legal right to use one or another tow-boat for its purposes at any stage of the voyage. When the cargo was delivered on the specified barge, and the bill of lading received therefor, the duties of transportation were assumed by the respondent. The latter's mode of gathering together several barges from different places, to make up a general tow or fleet for its own convenience, was no part of its contract with the shippers—they may have been residents of far-distant places forwarding their goods to St. Louis for transportation to New Orleans. Once delivered under proper bills of lading to respondent, they had a legal right to rely on their contracts, irrespective of contracts with other shippers, or with arrangements that respondent might make for its own convenience. Whatever respondent did, after receipts under its bill of lading, it did at its own costs and for its own purposes. It might employ one or more tug-boats or tow-boats, as it deemed best; but it could not thereby escape the obligation of its contracts with the shippers, nor remit them to the sole responsibility of such tug-boats.

This is not a case of collision where a third party pursues the wrong-doer, nor where a tug-boat seeks to escape the consequence of its own wrong. Whether an action would lie against the tug-boats employed by the respondents need not be discussed, for the sole question here pertains to the original and continued liability of the respondent, despite the agencies it employed.

The evidence concerning the duties of harbor tugs with respect to tow-lines and lookouts, or of respondent's duties with respect thereto, cannot affect the question under consideration. It was the duty of respondent to do, or cause to be done, whatever was needed for the safe transportation of the shippers' property; hence, no act of negligence by the harbor tug will, as against the shippers, excuse the respondent. It may or it may not be that the respondent has a cause of action against the harbor tugs for the injury done the shippers, and might have maintained a suit therefor, originally, for such

injury to said shippers, and to its own barges. The special question is, when, according to the necessities or custom of a port, an injury is caused by a tug employed by a vessel, is the tug to be visited solely with the loss, and the vessel towed to be exonerated, irrespective of the bill of lading; or whether the vessel on which the goods are shipped is liable to the shippers, leaving it to its redress against the tug? It may be that the shippers had a cause of action against the tug, and that the respondent could have maintained such an action for itself and the shippers; yet the question recurs whether, under the contracts of affreightment, the respondent is not liable for injuries caused through the misconduct of its own agents. Nothing except a peril of navigation, etc., would excuse the respondent. If a collision is such a peril, when the fault is solely of another colliding vessel, can the faults or negligences of tugs employed by the respondent under the circumstances stated be considered as perils external to itself, which it could not and ought not to control? In other words, ought not the action of the tugs to be considered the action of the respondent, just as positively as if the loss had occurred after the fleet had been made up and was proceeding on its way with respondent's towboats in charge, through whose fault the loss occurred? Under the latter supposition, the negligence of respondent's tow-boat would work no excuse; and so if one or more harbor tugs were used by it, and through the negligence of one or the other, or both, the vessel bound by the contract of affreightment failed to fulfill the same, the loss is one for which it is responsible.

The many cases cited refer to injuries where third parties suffer from collisions, vessels being in tow of harbor tugs. The case under consideration is clearly distinguishable in principle, for here the shipper sues on his contract of affreightment, and the respondent can be discharged from its obligation only by proof of an excepted peril. Instead of proving a loss by an excepted peril, the evidence shows a loss through the negligence of its own agents—one or both of the tug-boats.

The court holds that the respondent is liable, and decrees accordingly, and orders that the case be referred to William Morgan to report the amount of the loss sustained under the contracts of affreightment.